[No. H006627. Sixth Dist. Mar. 18, 1991.]

LOUISA STURTEVANT, Plaintiff and Appellant, v.
COUNTY OF MONTEREY et al., Defendants and Respondents.

COUNSEL

Frey & Logan, Anthony Frey, Malbour Watson and Mary C. Logan for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel, Mark A. Cameron and Susan G. Flanagan for Defendants and Respondents.

OPINION

**CAPACCIOLI, Acting P. J.—**

*Holding*

Workers' compensation is not an employee's exclusive remedy against an employer/hospital for its negligence in treating and thereby aggravating an industrial injury.

## Statement of the Case

Plaintiff Louisa Sturtevant filed an action for medical malpractice against her employers County of Monterey and Natividad Medical Center and a co-employee, John W. Buckner, M.D. The county and medical center moved for summary judgment on the ground that workers' compensation was her exclusive remedy. (See Lab. Code, §§ 3600, 3602.)[1] The trial court agreed and entered judgment in their favor. Plaintiff appeals from the judgment, claiming that she is entitled to sue the county and medical center under the dual capacity doctrine.[2] We agree and reverse the judgment.

## Standard of Review

The trial court may properly grant a motion for summary judgment only if there are no triable issues of fact and, as a matter of law, the moving party is entitled to judgment. (*Blankenheim* v. *E.F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1470 [266 Cal.Rptr. 593].)

## Facts

The material facts are undisputed.

On January 15, 1988, plaintiff, who was working at the center, fell and injured her right wrist, hand, and knee. She immediately sought treatment at the center and was seen by Dr. Buckner, a co-employee, who performed surgery on her wrist. Thereafter, plaintiff filed a workers' compensation claim against defendants and received (and continues to receive) temporary disability payments and compensation for medical expenses. Some time later, plaintiff filed the instant action against defendants and Dr. Buckner for medical malpractice.

## Discussion

From its inception, the workers' compensation system was intended to be and in general has been an employee's exclusive remedy against an employer for injuries sustained during the course and scope of employment. (§§ 3600 to 3602; see *Buttner* v. *American Bell Tel. Co.* (1940) 41 Cal.App.2d 581 [107 P.2d 439].) However, in *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8]; our Supreme Court created an exception to this exclusivity. There, a nurse was injured at work and then treated by her

---

[1] Unless otherwise specified, all further statutory references are to the Labor Code.

[2] Since Dr. Buckner did not join in the motion for summary judgment, judgment was not entered in his favor.

Hereafter, we refer to the county and medical center as defendants.

employer, a chiropractor, whom she later sued for negligence. Although her initial work injury was covered by workers' compensation, the court permitted her to sue her employer for his subsequent negligence. The court explained that, in treating her, the employer had assumed obligations different from those of an employer and could be sued for breaching them as if he were a third party.

*Duprey* is regarded as the source in California's dual capacity doctrine: when an employer engages in a relationship with the employee which is distinct from that of employer and employee and invokes a different set of obligations than those of an employer to its employee, the employee may recover damages at law for breach of the latter obligations. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 273-274 [179 Cal.Rptr. 30, 637 P.2d 266]; see Annot., 23 A.L.R.4th 1151.)

Since *Duprey*, courts have applied the doctrine in a variety of factual situations. (See, generally, 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, §§ 45-49, pp. 599-607.) Pertinent here is *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661 [166 Cal.Rptr. 177, 613 P.2d 238]. There, a hospital employee contracted a disease at work. She was admitted to the hospital and treated by its doctors. Under the doctrine, she was permitted to sue *the hospital* for the negligence of the doctors in aggravating her condition. (See *Hoffman* v. *Rogers* (1972) 22 Cal.App.3d 655 [99 Cal.Rptr. 455]; see also Annot., 73 A.L.R.4th 115.)

In 1982, the Legislature amended section 3602 and affected the applicability of the dual capacity doctrine. Section 3602 now provides, in relevant part, "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee . . . against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee . . . to bring an action at law for damages against the employer. [¶] (b) An employee . . . may bring an action at law for damages against the employer, as if this division did not apply, in the following instances: [¶] (1) Where the employee's injury or death is proximately caused by a willful physical assault by the employer. [¶] (2) Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment . . . . [¶] (3) Where the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person. [¶] (c) In all

cases where the conditions of compensation set forth in Section 3600 do not concur, the liability of the employer shall be the same as if this division had not been enacted." (See Stats. 1982, ch. 922, § 6, p. 3367.)[3]

█ In this case, plaintiff first asserts that the aggravation of her work-related injury is a separate and independent injury that did not occur while she was "performing service growing out of and incidental to [her] employment" and "acting within the course of [her] employment." (§ 3600, subd. (a)(2).) Consequently, she claims the right to sue defendants for this subsequent injury under section 3602, subdivision (c), which, as noted above, provides that where the conditions of compensation do not concur, the employer's liability is the same as if the workers' compensation statutes did not apply. We disagree.

---

[3] Section 3600 provides: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence. [¶] (4) Where the injury is not caused by the intoxication of the injured employee. [¶] (5) Where the injury is not intentionally self-inflicted. [¶] (6) Where the employee has not willfully and deliberately caused his or her own death. [¶] (7) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor. [¶] (8) Where the injury is not caused by the commission of a felonious act by the injured employee, for which he or she has been convicted. [¶] (9) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. The administrative director shall promulgate reasonable rules and regulations requiring employers to post and keep posted in a conspicuous place or places a notice advising employees of the provisions of this subdivision. Failure of the employer to post the notice shall not constitute an expression of intent to waive the provisions of this subdivision. [¶] (b) Where an employee, or his or her dependents, receives the compensation provided by this division and secures a judgment for, or settlement of, civil damages pursuant to those specific exemptions to the employee's exclusive remedy set forth in subdivision (b) of Section 3602 and Section 4558, the compensation paid under this division shall be credited against the judgment or settlement, and the employer shall be relieved from the obligation to pay further compensation to, or on behalf of, the employee or his or her dependents up to the net amount of the judgment or settlement received by the employee or his or her heirs, or that portion of the judgment as has been satisfied."

Section 3706 permits an employee to sue an employer for failure to secure payment of compensation.

Section 4558, in essence, expressly permits an employee to sue his or her employer for removing or failing to install a "point of operation guard on a power press."

Prior to 1982, the exclusivity provision for actions against *employers* was found in former section 3601; It did not expressly refer to or purport to affect the scope of the dual capacity doctrine. (See former § 3601; Stats. 1971, ch. 1751, § 1, p. 3780.)

Under the statutes, an employer has a duty to provide an injured employee with the treatment reasonably required to cure or relieve the effects of the work-related injury. (§ 4600.) Thus, an employer who is liable to pay workers' compensation benefits for a compensable injury also must pay benefits for its aggravation or a new injury resulting from medical malpractice in treating the underlying injury on the theory that such malpractice is one of the foreseeable consequences of that injury. (*D'Angona v. County of Los Angeles, supra*, 27 Cal.3d 661, 664; *Heaton v. Kerlan* (1946) 27 Cal.2d 716, 723 [166 P.2d 857]; *Fitzpatrick v. Fidelity & Casualty Co.* (1936) 7 Cal.2d 230, 233-234 [60 P.2d 276]; *Deauville v. Hall* (1961) 188 Cal.App.2d 535, 542 [10 Cal.Rptr. 511].) Consequently, the fact that such subsequent injuries do not themselves occur during the course and scope of employment is irrelevant.

If, as plaintiff claims, these subsequent injuries fall outside the workers' compensation system because the "conditions of compensation" did not exist when they were suffered, then, contrary to established precedent, an employer would not have a statutory obligation to pay for them. Moreover, if plaintiff's view were correct, then the plaintiffs in *Duprey v. Shane, supra*, 39 Cal.2d 781 and *D'Angona v. County of Los Angeles, supra*, 27 Cal.3d 661, could have sued their employers without the help of the dual capacity doctrine. However, it strains credulity to think that our Supreme Court developed the doctrine in those cases when it was unnecessary to do so.

 Plaintiff next claims that despite amended section 3602, she may still sue defendants under the *Duprey-D'Angona* dual capacity doctrine.[4]

Defendants, on the other hand, claim that in amending section 3602, the Legislature, in effect, overruled these cases. We disagree.

Subdivision (a) of section 3602 provides that workers' compensation is an employee's exclusive remedy against an employer for industrial injuries except as specifically provided in sections 3602, 3706, and 4558. It then specifically prohibits dual capacity tort actions against an employer where "either the employee or the employer [] occupied another or dual capacity prior to, or at the time of, the employee's industrial injury."

This language is clear and unambiguous. It obviously applies to a line of dual capacity cases in which an employer manufactures a product sold to the public that injures an employee.

---

[4] The facts here are distinguishable from *Deauville v. Hall, supra*, 188 Cal.App.2d 535 [no action under doctrine for alleged negligence in selecting third party doctor to treat employee's injury]; *Dixon v. Ford Motor Co.* (1975) 53 Cal.App.3d 499 [125 Cal.Rptr. 872] [no action for negligent treatment of industrial injury by company doctor at company clinic]; *Bell v. Macy's California* (1989) 212 Cal.App.3d 1442 [261 Cal.Rptr. 447] [no action for negligent treatment of illness by company nurse at company dispensary for employees and customers].

For example, in *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797], an employee was injured when a scaffolding manufactured by the employer collapsed. The doctrine was applied to permit the employee to sue the employer for products liability because the employer had assumed obligations toward the employee as a *manufacturer* that were separate from those of an employer. (See also, *Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605 [163 Cal.Rptr. 477] [suit against employer for injury caused by a product supplied by a separate legal entity of which the employer was a general partner]; *Moreno* v. *Leslie's Pool Mart* (1980) 110 Cal.App.3d 179 [167 Cal.Rptr. 747, 9 A.L.R.4th 869] [suit against employer by employee injured disposing of leaky bottles of chemicals manufactured by a division of the employer doing business under a different name]; *Bell* v. *Industrial Vangas, Inc.*, *supra*, 30 Cal.3d 268 [suit against employer by employee injured while delivering gas manufactured by his employer to customer].)[5]

Because in these cases the employer's dual capacity as employer and manufacturer existed *prior to* the employee's industrial injury, subdivision (a) of section 3602 would now prohibit an employee from bringing a product liability action under similar circumstances. (But see § 3602, subd. (b)(3) [creating a narrow exception for certain product liability suits]; see also Note, *Dual Capacity After A.B. 684 (After January 1, 1983)* (1983) 11 Western St. U. L.Rev. 59.)

Subdivision (a) of section 3602 would also apply in situations like that in *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495 [209 Cal.Rptr. 771]. There, a ski instructor employed by a resort had the bindings on her boots mounted at the resort's ski rental and repair shop, which provided services to the general public. At that time, she was allowed to sue the resort for negligence by the ski shop in mounting her bindings. However, since the resort's dual capacity as employer and boot binding mounter existed *prior to* the instructor's injury, such an action would now be prohibited.

Turning to the facts of this case, we observe that when plaintiff fell and injured her right wrist, hand, and knee, defendants' relationship to her was solely that of employer to employee. Later, when the center admitted her as a patient, defendants assumed the added duties of a medical care provider. Thereafter, defendants allegedly breached those duties by providing negligent medical care. Since defendants' dual capacity did not exist "prior to, or at the time of, the employee's industrial injury" (§ 3602, subd. (a)), but only

---

[5] Professor Arthur Larson, the foremost scholar on workers' compensation and author of the most comprehensive treatise on the subject, strongly criticized California's employer/manufacturer product liability cases, saying the California courts "went overboard" and "ran the [dual capacity] doctrine into the ground." (2A Larson, Workmen's Compensation Law (1987) § 72.81(c), pp. 14-239—14-243 (hereafter 2A Larson)).

*after* her injury, the specific limitation on the scope of the dual capacity doctrine in subdivision (a) of section 3602 does not apply, and, under *Duprey* and *D'Angona* plaintiff properly may sue defendants for their alleged medical malpractice.

As noted above, defendants claim the 1982 amendments abolished the dual capacity doctrine and codified any and all exceptions to the exclusive remedy provisions of the workers' compensation statutes. They cite several courts and commentators that have ventured to assert this opinion. (See, e.g., *Jones* v. *Kaiser Industries Corp.* (1987) 43 Cal.3d 552, 561 [237 Cal.Rptr. 568, 737 P.2d 771] ["In 1982 . . . the Legislature severely limited the scope of the [dual capacity doctrine] by confining its application to a narrow class of product liability cases."]; *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 161 [233 Cal.Rptr. 308, 729 P.2d 743]; *Burnelle* v. *Continental Can Co.* (1987) 193 Cal.App.3d 315, 318 [238 Cal.Rptr. 253]; *Continental Casualty Co.* v. *Superior Court* (1987) 190 Cal.App.3d 156, 160-162 [235 Cal.Rptr. 260] ["abridg[es] dual capacity doctrine" and "restrictively stat[es] judicial exceptions to exclusivity, implying no others exist"]; *Bell* v. *Macy's California, supra,* 212 Cal.App.3d 1442, 1450, fn. 3 ["In 1982, the Legislature amended [section 3602] to abolish the dual capacity doctrine except as allowed by statute."]; *Perry* v. *Heavenly Valley, supra,* 163 Cal.App.3d 495, 499-500; 2A Larson, *supra,* § 72.81(c), p. 14-243; 1 Herlick, Cal. Workers' Compensation Law (4th ed. 1984) §§ 12.20 and 12.21, pp. 12-41—12-44, 12-62—12-63; Review of Selected 1982 Legislation (1982) 14 Pac.L.Rev. 763, 763-764; Note, *Dual Capacity in California: A Premature End to an Equitable Doctrine?* (1985) 59 So.Cal.L.Rev. 205, 206.)

However, the courts' comments in the cases cited are all dicta. Moreover, neither the courts nor the commentators explain the basis for this view or analyze the specific statutory language in light of facts similar to those found here or in *Duprey* and *D'Angona.* Thus, we do not find the conclusory opinions of these courts and commentators controlling or persuasive.

We note that other courts and commentators have expressed more guarded opinions about the effect of the 1982 amendments, saying only that they limit the application of the dual capacity doctrine. (See e.g., *Hisel* v. *County of Los Angeles* (1987) 193 Cal.App.3d 969, 978 [238 Cal.Rptr. 678] [" 'severely limited' the dual capacity doctrine"]; *Hart* v. *National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, 1431, fn. 11 [235 Cal.Rptr. 68] [same]; *Blew* v. *Horner* (1986) 187 Cal.App.3d 1380, 1390, fn. 6 [232 Cal.Rptr. 660] ["drastically restricted" the doctrine]; *Siva* v. *General Tire & Rubber Co.* (1983) 146 Cal.App.3d 152, 156, fn. 6 [194 Cal.Rptr. 51] ["The

Legislature altered the employee's right to pursue actions under the dual capacity doctrine . . . ."].) We agree with this view.

For example, Witkin states that the Legislature "eliminated the dual capacity doctrine as a basis for a tort action against employers except in limited circumstances." (2 Witkin, *op. cit. supra*, § 50, p. 607.) He then cites, among others, Peyrat, California Workers' Damages Practice (Cont.Ed.Bar 1985) section 3.24, page 60, which analyzes the amendments and, not surprisingly, reaches the same conclusion we do: section 3602 "appears not to bar an employee's suit for medical negligence that occurs after the original industrial injury occurred." (*Id.*, § 3.23, p. 59; see *Id.*, § 3.24, p. 60; Swezey, Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 1.41, pp. 25-26; Walters, *Workers' Compensation* (1983) 3 Cal. Law. 40, 42 [action against employer for medical malpractice after industrial injury still available].)

Defendants nevertheless argue that when one reads subdivisions (a) and (b) of section 3602 together, it is clear that "[a]n employee may not bring an independent tort action against his/her employer unless one of the three enumerated exceptions set forth in subdivision (b) applies." We disagree.

In construing section 3602, our primary task is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We turn first to the words of the statute for the answer. (*Ibid.*) If they are clear, we need look no further. (*Id.* at p. 726.)

According to defendants, subdivision (a) of section 3602 generally prohibits all tort actions against employers and subdivision (b) provides the only exceptions. However, the language of the statute does not support this interpretation.

Subdivision (a) of section 3602 itself limits the scope of exclusivity. It specifically permits actions as provided in sections 3706 and 4558. (See fn. 3, *ante*, p. 763.) It also prohibits dual capacity tort actions against employers when the dual capacity existed "prior to, or at the time of, the employee's industrial injury." As noted above, this language is clear and unambiguous. It does not reasonably indicate an intent to completely prohibit all dual capacity cases. Rather, its express temporal specificity limits the scope of its prohibition, reflecting an intent not to prohibit use of the dual capacity doctrine in cases that do not fall within its express terms. As such, subdivision (a) specifically exempts from its general provision of exclusivity cases where the employer did not occupy a dual capacity toward its employee until *after* the employee suffered a compensable industrial injury.

Subdivision (b) of section 3602 nullifies the effect of subdivision (a) in certain situations. Among other things, it allows one type of dual capacity case that subdivision (a) would otherwise prohibit. (§ 3602, subd. (b)(3).)

The fact that subdivision (b) does not also include an exception for medical negligence cases such as this one does not suggest that they too are generally prohibited. Rather, providing such an express exception in subdivision (b) was unnecessary because subdivision (a) does not prohibit them in the first place.

For this reason, we also reject defendants' argument that "[b]ecause the [L]egislature was aware of the *Duprey* and *D'Angona* decisions and because it initially considered codifying said exception, but did not, it is clear that the [L]egislature intended to *abolish* the dual capacity doctrine in medical malpractice situations." (Italics in original.)

 Defendants also misplace reliance on the doctrine of *expressio unius est exclusio alterius*, i,e., when exceptions to a general rule are specified by statute, other exceptions are not to be inferred or presumed. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196 [132 Cal.Rptr. 377, 553 P.2d 537].)

We agree that since subdivision (b) of section 3602 provides express exceptions to subdivision (a), we should not infer or presume the existence of other exceptions. However, where, as here, subdivision (a) does not prohibit plaintiff's action in the first instance, we need not infer or presume an exception to that subsection in order to permit plaintiff's action.

 In sum, when read together, subdivisions (a) and (b) of section 3602 do not reflect a legislative intent to prohibit *Duprey-D'Angona*-type dual capacity cases. Moreover, we can discern no reason to expand the language of subdivision (a) to prohibit tort actions where a dual capacity existed *after* the employee's industrial injury. Indeed, where the statutory words are clear, we should not add to them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].)

Defendants claim that the term "industrial injury" in subdivision (a) of section 3602 includes both the original injury *and* any aggravation caused by subsequent medical malpractice. Using this definition, they claim that that subdivision prohibits this action because their dual capacity as employer and medical care provider existed "prior to, or at the time of, [plaintiff's] industrial injury," that is, at the time her injuries were aggravated. This argument is meritless.

██ The only authority cited for the proposition that the term "industrial injury" in section 3602, subdivision (a), includes subsequent aggravation is *Heaton* v. *Kerlan, supra,* 27 Cal.2d 716, 720. In *Heaton,* the court observed only that an employer is liable for the "consequences" of an accident, including subsequent injuries caused by negligent treatment. As previously discussed, the basis for such liability is (1) the employer's obligation to pay for the effects of a compensable injury and (2) the fact that negligent treatment is a reasonably foreseeable consequence of a compensable injury. (*Deauville* v. *Hall, supra,* 188 Cal.App.2d 535, 541.) *Heaton* does not, however, suggest that the term "industrial injury" in subdivision (a) of section 3602 means more than the original compensable injury "arising out of the employment" (§ 3208) and occurring while the employee is "performing service growing out of and incidental to his or her employment" and "acting within the course of his or her employment." (§ 3600.)

Thus, although, as previously discussed, an employer is liable under the workers' compensation system for the *consequences* of a compensable injury, including negligent treatment, this fact does not lead us to construe the phrase "prior to, or at the time of, the employee's industrial injury" to mean prior to, or at the time of, either the employee's industrial injury or *the reasonably foreseeable injurious consequences thereof.*

Both parties have asked us to take judicial notice of certain legislative material, each claiming it supports their respective positions. (Cf. *Hisel* v. *County of Los Angeles, supra,* 193 Cal.App.3d 969, 978, fn. 13 [such material is judicially noticeable].) However, because the language of section 3602 is clear and unambiguous, we need not look beyond it to determine its meaning. (Cf. *Brown* v. *Kelly Broadcasting Co., supra,* 48 Cal.3d 711, 726.)

In any event, we have reviewed the materials.

██ Defendants offer a letter written by Senator Daniel Boatwright and printed in the Senate Journal. In it, he expresses *his* intentions in voting for the bill amending section 3602. However, Senator Boatwright's personal views on the bill are irrelevant in determining its meaning. (*Perry* v. *Heavenly Valley, supra,* 163 Cal.App.3d 495, 502.)

Defendants also provide some legislative analyses explaining that the bill will limit an employee's ability to recover civil damages from an employer for industrial injuries to the exceptions set forth in section 3602, subdivision (b).

Plaintiff provides a "Floor Statement Draft," stating that the proposed bill preserves an employee's right to bring an action "where the employee

sustains further injury as a result of negligent medical treatment by the employer or the employer's agent[.]" However, plaintiff does not identify whose statement this is or whether it was ever given.

Plaintiff also provides legislative analyses that say the bill would permit *Duprey-D'Angona* type tort actions against employers for medical negligence.

We find these legislative materials to be inconclusive evidence of the Legislature's intent and therefore of no value in determining the meaning of section section 3602.

### Conclusion and Disposition

Since, as discussed above, workers' compensation is not plaintiff's sole remedy against defendants for their alleged medical negligence in aggravating a previous industrial injury, the trial court erred in granting defendants' motion for summary judgment.

The judgment is reversed. Plaintiff is entitled to her costs on appeal. (Cal. Rules of Court, rule 26(a).)

Elia, J., and Bamattre-Manoukian, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 30, 1991. Panelli, J., was of the opinion that the petition should be granted.