Judy DYKE and Dave Dyke,
Plaintiffs–Appellants,

v.

SAINT FRANCIS HOSPITAL, INC., an Oklahoma Corporation, Robert G. Tompkins, M.D., George B. Caldwell, M.D., Stanley N. Schwartz, M.D., and Robert Jordan, M.D., Defendants–Appellees,

and

Joe LeBlanc, M.D., Merck & Co., Merck, Sharp and Dohme, Inc., Defendants.

No. 77147.

Supreme Court of Oklahoma.

Sept. 22, 1993.

Michael James King and M. Jean Holmes, Winters, King & Associates, Tulsa, for plaintiffs-appellants.

James W. Connor, Jr. and Ann Makela Schneider, Barkley, Rodolf & McCarthy, Tulsa, for defendant-appellee, Saint Francis Hosp.

Joseph A. Sharp, John H.T. Sheridan and Karen M. Grundy, Best, Sharp, Holden, Sheridan & Stritzke, Tulsa, for defendants-appellees, Tompkins, Caldwell, Jordan, and Schwartz.

OPALA, Justice.

The dispositive issue on certiorari is whether the trial court *erred* in dismissing the plaintiffs' claim for failure to state a cause of action? We answer *in the affirmative.*

## I

### THE ANATOMY OF LITIGATION

Judy Dyke [Dyke], a nurse employed by defendant St. Francis Hospital [Hospital], alleged that before October 1986 she was *exposed to hepatitis* in the course of her employment. The hospital directed her to the employee health department, where she came under the care of the defendant doctors, Robert G. Tompkins, Joe LeBlanc, George B. Caldwell, Stanley N. Schwartz and Robert Jordan [Doctors]. These physicians treated Dyke with a series of three vaccines (Heptavax–B). After receiving two more shots of Heptavax–B, Dyke became seriously ill with Guillain–Barré syndrome.

Dyke and her husband[1] brought a malpractice action against the doctors and hospital on *March 30, 1990.*[2] Dyke alleged that the physicians were "associated with"

---

1. The plaintiffs, Judy and Dave Dyke, are collectively referred to as Dyke or plaintiffs.

2. The plaintiffs' petition presses *two other causes of action.* It seeks damages against Merck & Co. and Merck, Sharp and Dohme, Inc., *qua* manufacturers of the Heptavax–B vaccine. Mr. Dyke claimed for loss of consortium. The action against Merck & Co., Merck, Sharp and Dohme, Inc. and Joe LeBlanc, M.D., was dismissed without prejudice. No service was obtained on these defendants. Record at 78 through 80.

the employee health department and had been "designated by" the hospital to administer medical care to the hospital's employees. According to Dyke, the defendant doctors were "agents, servants and employees" of the hospital and were "acting within the scope of their agency, service and employment" at "all times material" to the lawsuit.

The doctors and the hospital separately moved to dismiss for failure to state a claim upon which relief may be granted. They advanced *lack of subject matter jurisdiction* based on the *exclusivity* of Oklahoma's *compensation remedy.* The trial court took the case under advisement and later dismissed the suit *against the hospital and the doctors.*

The Court of Appeals reversed the dismissal order. It held the "dual persona" doctrine [3] available to provide Dyke with a tort remedy against the hospital and the named physicians. The appellate court reasoned that when the hospital—acting through the doctors—sought to treat Dyke for her exposure to hepatitis, it assumed obligations *unrelated* to those of the employer, which in turn gave rise to distinct duties. The opinion concludes that Dyke *could prove* a set of facts that would bring her claim within the dual persona doctrine

and would entitle her to tort recovery against the doctors.

We hold that the district court *erred* in dismissing the action for failure to state a claim *both against* the doctors and the hospital. Since the judgment roll of Dyke's compensation claim was *not* before the district court when it considered the dismissal motions, the nisi prius court had *no* opportunity to assess the defendants' claim to immunity based either on the exclusivity provisions of the Workers' Compensation Act [4] or on the law's bar against relitigation of an adjudged compensation claim as a tort remedy.[5] We granted certiorari because, even if the dual persona doctrine *were viable* in Oklahoma, the record in this case gives no support to its application.

## II

### DYKE'S PETITION STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST THE DEFENDANTS

The applicable test for appraising the sufficiency of a pleading challenged for failure to state a claim upon which relief may be granted teaches that *no dismissal* may be effected unless it should appear *beyond doubt* that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief.[6] Under

---

3. For a discussion of the dual persona doctrine, see Part III *infra.*

4. The pertinent terms of 85 O.S.Supp.1984 § 12 are:

 "The *liability prescribed in Section 11* of this title *shall be exclusive and in place of all other liability* of the employer *and any of his employees* ... at common law or otherwise, for such injury, loss of services, or death, to the employee...." (Emphasis added.)
 The pertinent terms of 85 O.S.1981 § 122 are: "The *right of action to recover damages for personal injuries or death* arising and occurring in employment as herein defined ... *is* hereby abrogated and *all jurisdiction of the courts of this state over such causes,* except as to the cause reserved to such injured employees or their dependents or other legal representatives in Sections 12 and 44 of this title *is* hereby *abolished."* (Emphasis added.)

5. *See Pryse Monument Co. v. District Court,* Okl., 595 P.2d 435, 437–438 (1979).

6. The terms of 12 O.S.1991 § 2012(B) provide in pertinent part:

 " * * * If, on a motion asserting the defense numbered 6 of this subsection to dismiss for *failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated *as one for summary judgment* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment. * * * " (Emphasis added).
 "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 568 n. 15, 107 S.Ct. 1410, 1417 n. 15, 94 L.Ed.2d 563 (1987); *Frazier v. Bryan Memorial Hosp. Authority,* Okl., 775 P.2d 281, 289 (1989); see also, Committee Comment to 12 O.S.1991

our pleading regime,[7] if the dismissal motion also tenders for consideration materials *dehors* the pleadings, summary judgment procedure must be utilized.[8]

Dyke argues that she stated a claim against the hospital under the dual persona doctrine, and against the doctors either as employees or independent contractors. She alleges that her injuries were caused by the hospital—acting through the physicians as its health care providers—when the defendants negligently administered a vaccine in her treatment for exposure to hepatitis. According to Dyke, the doctors had been designated by the hospital to administer medical care to its employees and in doing so were acting *qua* the hospital's "agents, servants and employees." She argues that her allegation that the doctors were *"agents, servants and employees"* of the hospital at the time of the injurious event is sufficient to withstand a motion to dismiss and she complains that *she should have been permitted to discover the true nature of the relationship between the doctors and hospital.* Dyke maintains *the defendants' dismissal quest was prematurely reached for disposition.* Moreover, she urges error in the trial court's failure to allow her to amend her pleading.

The hospital and doctors support the nisi prius dismissal order with the argument that the trial court *lacked subject matter jurisdiction because Dyke had filed a workers' compensation claim.* The hospital *attached* to its *trial-court* brief a copy of *Dyke's first notice of accidental injury and claim for compensation (Form 3),* which had been filed with the Workers' Compensation Court. *On appeal* the hospital also *appended* to its answer brief a *copy of Dyke's compensation award.* Dyke's nisi prius briefs neither addressed the exclusivity-of-compensation argument nor acknowledged that a compensation claim had been filed. On appeal *she concedes only that a compensation claim is pending.*

■ None of the materials attached to the trial and appellate paperwork is available to invoke the claimed protection of the §§ 12 and 122 immunity[9] from tort suit. The Form 3 appended to the hospital's trial-court brief does not by itself demonstrate the district court's lack of cognizance over Dyke's tort claim. Nor does the record indicate that the trial court transformed the dismissal process into summary judgment proceedings by viewing the attachment as evidentiary material under Rule 13, Rules for the District Court.[10] Even if the trial judge had so considered that attachment, the Form 3 by itself does not in this case rise to proof of the hospital's immunity from tort liability.

■ As for the later attachment of the award, a party cannot supplement the record on appeal by injecting into it material

§ 2012(B). The Committee Comment to § 2012(B)(6) observes that § 2012(B) "is virtually the same as Federal Rule of Civil Procedure 12(b) ... [A] motion to dismiss for failure to state a claim upon which relief can be granted under paragraph 6 of subsection B of Section 2012 replaces the code versions of the general demurrer to the pleadings. But a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

The philosophy that guided the drafters of federal rules, the system after which our own pleading regime is patterned, was aptly described by Justice Black in *Surowitz v. Hilton Hotels Corporation,* 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed.2d 807 (1966):
"These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits."

7. The Oklahoma Pleading Code, 12 O.S.1991 §§ 2001 et seq.

8. *See in this connection, Norman v. Trison,* Okl., 832 P.2d 6, 8 (1992); *Silver v. Slusher,* Okl., 770 P.2d 878, 881 n. 8 (1988).

9. For the pertinent terms of 85 O.S.Supp.1984 § 12 and 85 O.S.1981 § 122, see *supra* note 4.

10. 12 O.S.Supp.1984, Ch. 2, App. The order *clearly indicates* the action was dismissed for failure to allege facts upon which relief may be granted *rather than by summary judgment.*

*that was not before the trial court* at the decisional stage of the case.[11] Our review of a nisi prius ruling on a dismissal motion must be rested on the record which was *then properly* before the court rather than on one that could have been assembled in a summary judgment process.[12] An appellate court will not make first-instance determinations of law or fact. That is the role of a trial court.[13] The hospital's attempt to cure the deficient appellate record by attaching to its brief the compensation award *did not supplement the record for review.*

Considering all allegations in the nisi prius pleadings and disregarding, as we must, the defendants' immunity argument which rests on an insufficient record, we hold that, for the reasons to be explained, the petition *is not fatally defective for want of facts upon which relief may be granted.*

## III

### APPLICABILITY OF THE DUAL PERSONA DOCTRINE AGAINST THE HOSPITAL *QUA* HEALTH CARE PROVIDER

Dyke urges that the court adopt the dual persona doctrine.[14] She asserts that it applies here because the employer had assumed *another* persona—that of health care provider. She argues that the doctrine supports the hospital's tort liability because she was initially injured on the job

by exposure to hepatitis, and the treatment for this harm (the hepatitis vaccine) caused a new injury, the Guillain–Barré syndrome. The new injury, she adds, was caused by negligent medical care provided by the employer *qua* health care provider. In our effort to offer guidance for the proceedings to be conducted upon remand, we consider in Part III the dual persona doctrine's applicability to this case and discuss there the reach of the compensation law's immunity.

### A.

### *The Dual Persona Doctrine*

■ According to the dual persona doctrine, an employer shielded from tort exposure by the compensation law's exclusivity provisions may nonetheless become liable to the employee *ex delicto* if, when inflicting the harm, the employer was acting in *some different capacity.* The test for dual persona responsibility calls for ascertaining if the employer assumed a second persona which is so completely and distinctly independent from its status of employer that the law should recognize the employer's other persona as a separate entity.[15] While this court has rejected the doctrine's application for cases where common-law liability was sought to be imposed upon the employer as a product manufacturer,[16] we have noted that situations might arise which

---

**11.** *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936 (1989); *Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 723 (1986); *Frey v. Independence Fire and Casualty Co.,* Okl., 698 P.2d 17, 20 (1985); *Eckel v. Adair,* Okl., 698 P.2d 921, 925 (1985). Rule 18, Rules of the Supreme Court of Oklahoma, 12 O.S.1991, Ch. 15, App. 1, states in part that " * * * [e]xcept for photostatic copies of cases relied upon, materials *not included in the appellate record* may not be copied in or attached to the brief. * * *" (Emphasis added.)

**12.** *See Hulsey, supra* note 11 at 936; *Frey, supra* note 11 at 20; *RST Service Mfg., Inc. v. Mussellwhite,* Okl., 628 P.2d 366, 368 (1981).

**13.** When necessary determinations are absent from the record, the case must be remanded with directions that they be made after remand. *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 (1955); *Matter of Estate of Bartlett,* Okl., 680

P.2d 369, 377 (1984); *Sandpiper North Apartments v. Am. Nat. Bank,* Okl., 680 P.2d 983, 993 (1984); *American Ins. Ass'n v. Indus. Com'n,* Okl., 745 P.2d 737, 740 (1987); *Robert L. Wheeler, Inc. v. Scott,* Okl., 777 P.2d 394, 399 (1989); *Matter of Estate of Pope,* Okl., 808 P.2d 640, 642 (1990).

**14.** *See* Part III(A).

**15.** *Weber v. Armco, Inc.,* Okl., 663 P.2d 1221, 1226 (1983); *Deffenbaugh v. Hudson,* Okl., 791 P.2d 84, 90 (1990).

**16.** In *Weber, supra* note 15 at 1226, the court reasoned that the defendant/manufacturer's duty to produce a defect-free product and the same defendant's duty as an employer to provide a safe workplace are "so inextricably wound that they cannot be logically separated into two distinct legal personas."

would preclude an employer from interposing its §§ 12 and 122 immunity [17] from tort suit.[18]

 Under the California version of the dual persona doctrine, an employer who administers health care services to an employee could be liable both in workers' compensation and in tort for its negligence as health care provider.[19] For the dual persona doctrine to apply, the injurious consequences must be severable—i.e., the original harm must have arisen when the employer was acting *qua* employer and some later harm when the employer was acting as a health care provider. In other words, there must be an antecedent accidental (compensable) injury, later to be followed by medical treatment administered in a different capacity, which either aggravated the on-the-job condition or caused a new injury. *The dual persona doctrine cannot be applied if the undenied facts indicate that at the critical time of injury for which recovery is sought the employer was acting in only one capacity.*[20]

Assuming, without deciding, that the dual persona distinction is available in Oklahoma, it is clear that in order to benefit from the doctrine Dyke must show the existence of an *earlier compensable injury* for which the hospital treated her *qua*

health care provider in a manner that was negligent in either aggravating the on-the-job injury or causing a new one.

## B.

### Exposure To An Infectious Disease

Dyke alleged that she was *exposed* to hepatitis in the course of her employment at the hospital and that she was harmed *when the doctors later treated her for this exposure.* She urges on certiorari that this case is appropriate for application of the dual persona doctrine because *her pre-treatment on-the-job exposure to hepatitis constitutes a compensable injury,* with the added harm occurring when the hospital negligently acted in the capacity of health care provider. Dyke's contention does not garner support in Oklahoma's extant jurisprudence.

 *Mere exposure* to an infectious disease, no matter how threatening, is not enough to constitute a compensable event—it is not "accidental injury". An on-the-job exposure must pass through the incubation period and develop into an infectious disease *before* it may be viewed as an accidental injury compensable by the employer.[21] An employer's apprehension of

---

**17.** For the pertinent terms of 85 O.S.Supp.1984 § 12 and 85 O.S.1981 § 122, see *supra* note 4.

**18.** *Weber, supra* note 15 at 1226, citing *Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (1952); *Deffenebaugh, supra* note 15 at 89. *Duprey* is the seminal dual capacity California case. There, the plaintiff, employed as a nurse, sustained a job-related injury. Her employer-doctor and a co-employee treated the industrial injury. She later filed a tort action against her employer and co-worker, alleging that their treatment aggravated her original injury and caused further disability. The California appellate court held that an injured employee, whose industrial injury was aggravated by the treatment of the physician-employer, could sue both the employer and co-employee for malpractice, despite the compensation law's exclusivity. The court reasoned that when the employing doctor elected to treat the on-the-job injury, the physician assumed the same responsibility as that any other doctor would have owed. Because a third-party doctor can be sued for malpractice, the court held, "it follows that the employer-doctor may [also] be sued for malpractice when he elects to treat the industrial injury." *Id.,* 249 P.2d at 13.

In 1982 California amended its Workers' Compensation Act to bar tort actions in those situations where the employer occupies a dual capacity *prior to, or at the time of,* the employee's industrial injury. In *Sturtevant v. County of Monterey,* 228 Cal.App.3d 758, 279 Cal.Rptr. 161 (1991), the court held that the 1982 enactment was not intended to apply to those situations where the dual capacity did not come into existence until after the industrial injury. Under the *Sturtevant* rationale a hospital employee injured in a job-related accident and subsequently treated at the hospital was allowed to sue the hospital in malpractice for the aggravation of her industrial injury.

**19.** *See Duprey* and *Sturtevant, supra* note 18.

**20.** *See Duprey, supra* note 18.

**21.** *City of Nichols Hills v. Hill,* Okl., 534 P.2d 931, 935 (1975); *Enid State School v. Mitchell,* Okl., 590 P.2d 1179, 1180 (1978); *Wilson Foods Corp. v. Porter,* Okl., 612 P.2d 261, 264–265 (1980).

302

an employee's exposure to a disease, even when followed by the act of administering prophylactic vaccination, cannot be translated into compensation liability for an "accidental personal injury." One who provides to its employee *preventative medical services* unrelated to *an antecedent industrial injury* does not appear to be discharging duties imposed by 85 O.S.1981 § 14 of the Workers' Compensation Act.[22] For treatment ordered to be administered *dehors* § 14 the employer *clearly would stand liable, if at all, solely* in tort as a health care provider but not in compensation *qua* employer.

We next discuss the effect of the employer's claim to immunity based on the compensation law's exclusivity.

### C.

### *The Pryse Monument "Election-of-Remedies" Rule*

Under the teachings of *Pryse Monument Co. v. District Court*[23] an employee who has two remedies for the same injury and has prosecuted one of them to conclusion (securing an award or judgment), is barred from resort to the other remedy. This rule, which in essence erects a res judicata bar, is applicable to compensation claimants who may also press a tort remedy. *The dual persona doctrine does not sanction multiple recovery through two remedies for the same harm.* It merely allows an apportionment so that harm caused by the employer as health care provider *may be separated* from the on-the-job injury for tort recovery.[24]

If Dyke did indeed *secure compensation for the harm caused by the hospital's negligence as health care provider*, she may no longer have a dual persona tort claim for the employer's lack of due care in treating her.[25] The law provides but one method to avoid the *Pryse Monument* bar. If the employer used fraud or coercion to induce an employee to bring a claim in compensation, the employee may proceed in a district court suit to set aside the award for extrinsic fraud.[26] Barring this relief, which is the *sine qua non* of a later tort redress, the award must be given its full res judicata effect.

### D.

### *The Legal Effect Of The Compensation Award On The Tort Claim*

An inquiry into the meaning and legal effect of a judgment is confined to the face of the "judgment roll" (in an administrative tribunal, or in a court other than the district court, the inquiry must be made by an "inspection" of the "face of the

---

**22.** The terms of 85 O.S.1981 § 14 provide in pertinent part:

"A. The employer shall promptly provide for an *injured* employee such medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may be necessary after the injury ...

\* \* \* \* \* \*

E. ... The right to recover charges for every type of medical care *for personal injuries arising out of and in the course of covered employment* as herein defined, shall *lie solely with the Workers' Compensation Court*, and all jurisdiction of the other trial courts of this state over such action is hereby abolished. \* \* \* " (Emphasis added.)

The quoted language was not changed by the 1986, 1990 and 1992 amendments.

**23.** *Supra* note 5 at 437–438. *See also Llewellyn v. Smith*, Okl., 593 P.2d 771 (1979) and *H.L. Hutton & Co. v. District Court of Kay County*, Okl., 398 P.2d 530, 533 (1965).

**24.** When redress is sought for an on-the-job injury against an *uninsured employer*, the employee has two *alternative* remedies for the same harm—one in tort and another in compensation. Once either of these remedies has been pursued to judgment, the other one stands barred. *Pryse Monument, supra* note 5 at 437. We cannot tell from the record if Dyke's claim for compensation included the harm allegedly caused her by the employer as health care provider. If the face of the proceedings in the workers' compensation court would show that Dyke *was* compensated for her injury from the negligent treatment, a question would arise whether the *Pryse Monument* doctrine bars her later recovery in tort.

**25.** *Pryse Monument, supra* note 5 at 437.

**26.** *Morgan v. Vandevers Dry Goods Co.*, Okl., 370 P.2d 830 (1962).

proceedings").[27] Once a compensation award has become final for want of an appeal or in consequence of an appellate court's decision, any controversy over its meaning and effect must be resolved by resort to *"the face of the entire proceedings"*. The meaning of an award is hence to be divined from the terms of its text, to be construed with the other parts of the judgment roll.[28] Although a trial judge, if called upon to do so, may take judicial notice of any record in the court on which he (or she) sits,[29] such notice cannot be taken of another court's record.[30] A judgment from another court must be established by competent evidence. The judgment roll or the entire "face of the proceedings" constitutes the *sole method* for proving the effect or meaning of a judgment or award. An appellate court cannot take judicial notice of material which (a) was legally available for judicial notice of the trial court but has not been incorporated into the record on appeal[31] or (b) was not before the trial court when the decision was made.[32]

While appellate scrutiny is generally confined strictly to the record of proceedings below,[33] a well-recognized exception allows an appellate tribunal to consider those after-occurring facts, transpiring during the pendency of an appeal, *which adversely affect the reviewing court's cognizance* or its capacity to administer effective relief.[34] *This case does not fall within the narrow exception. Our cognizance of this case* is unaffected by Dyke's mid-appeal proceedings for the compensation award. The hospital's attachment of the compensation award to its answer brief is but an ineffective attempt to supplement the record on appeal.

### E.

### *The Liability of Defendant–Physicians*

Since this cause must be remanded for re-consideration of the hospital's dismissal motion based on its claim to immunity, we need not further comment on the liability of the doctors except to observe that in *German v. Chemray, Inc.*[35] the earlier doctrine, *which made the employer vicariously liable for medical malprac-*

**27.** The legal effect of a finally adjudicated case is measured by the four corners of its judgment roll. *Willard v. Kelley,* Okl., 803 P.2d 1124, 1134 n. 32 (1990); *Chandler v. Denton,* Okl. 741 P.2d 855, 861 (1987); *Reeves v. Agee,* Okl., 769 P.2d 745, 752 (1989); *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 895 (1985); *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 592 (1985). *Union Indemnity Co. v. Saling,* 166 Okl. 133, 26 P.2d 217, 226 (1933), *teaches that the validity of compensation awards, like district court judgments, is determined from an inspection of the face of the proceedings* before that court. Similarly, in *Mullins v. Ward,* Okl., 712 P.2d 55, 59 (1985), the court holds that an inquiry into the validity of Corporation Commission orders *stands confined to an inspection of the face of the proceedings* (i.e., the application, the process by which the parties were notified and the Commission's order).

**28.** *Chandler, supra* note 27 at 861, *Timmons, supra* note 27 at 592; *Mayhue, supra* note 27 at 895.

**29.** *Willard, supra* note 27 at 1134; *Reeves, supra* note 27 at 752 n. 16.

**30.** *Fibikowski v. Fibikowski,* 185 Okl. 520, 94 P.2d 921, 926 (1939).

**31.** *Reeves, supra* note 27 at 753; *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181

(1986); *Timmons, supra* note 27 at 592; *Eckel, supra* note 11 at 924. Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. *Reeves, supra* note 27 at 753; *Womack, supra* at 1181; *Timmons, supra* note 27 at 592 n. 10.

**32.** *Hulsey, supra* note 11 at 936; *Chamberlin, supra* note 11 at 723; *Frey, supra* note 11 at 20.

**33.** *Eckel, supra* note 11 at 925; *Sooner Federal Sav. & Loan Ass'n v. Mobley,* Okl., 645 P.2d 1000, 1004 (1982).

**34.** *Tulsa v. Chamblee,* 188 Okl. 94, 106 P.2d 796 (1940) (syllabus ¶ 1); *Northeast Okl. Elec. v. Corp. Com'n,* Okl., 808 P.2d 680, 683 (1991); *Lawrence v. Cleveland County Home Loan Auth.,* Okl., 626 P.2d 314 (1981); *Baird v. Independent Sch. Dist. No. 3, Etc.,* Okl., 622 P.2d 1072, 1074 (1981).

**35.** Okl., 564 P.2d 636 (1977). *German* overruled *Markley v. White,* 168 Okl. 244, 32 P.2d 716 (1934), and *Alexander v. Von Wedel,* 169 Okl. 341, 37 P.2d 252 (1934), which held that the employer was liable for all legitimate consequences of an employee's compensable injury, including malpractice by a physician.

**304**

*tice of physicians who treated the employee's on-the-job injury, is now abolished. A physician can no longer be absolved of professional tort liability solely on the grounds of the employer's compensation-law immunity.*

### SUMMARY

In sum, *this record, when confined to its rightful legal contents, does not show, and we cannot hold,* that (a) Dyke sustained *any* on-the-job injury; (b) the harm she allegedly suffered from medical treatment administered for her exposure to hepatitis was remediable *solely* in the Workers' Compensation Court; and (c) Dyke *secured* a compensation award that would bar her present action or *any* other *ex delicto* recovery by affording the hospital or the defendant-physicians a shield from tort liability based either on the §§ 12 and 122 immunity or on the teachings of *Pryse Monument.*

It is for these reasons that the dismissal order must be reversed and the cause remanded *for reconsideration of Dyke's claim against the hospital and the defendant-physicians.*

CERTIORARI PREVIOUSLY GRANTED; THE OPINION OF THE COURT OF APPEALS IS VACATED, THE TRIAL COURT'S DISMISSAL ORDER IS REVERSED AND THE CAUSE REMANDED FOR RECONSIDERATION OF THE CLAIMS AGAINST THE HOSPITAL AND DOCTORS IN A MANNER CONSISTENT WITH THIS PRONOUNCEMENT.[36]

LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

HODGES, C.J., and KAUGER and WATT, JJ., concur in result.

SIMMS, J., concurs in judgment.

---

**36.** In *Seymour v. Swart,* Okl., 695 P.2d 509, 512–513 (1985), we noted that when on reversal a cause is remanded for a new trial, it returns to the trial court as if it had never been decided, save only for the "settled law" applicable to the case.