2002 OK CIV APP 29

**DEACONESS HOSPITAL, OWN RISK, Petitioner,**

v.

**Deborah A. LEDBETTER and The Workers' Compensation Court, Respondents.**

No. 95,839.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 23, 2001.

Rehearing Denied Dec. 10, 2001.

Certiorari Denied Feb. 20, 2002.

Louis G. Buchanan, Oklahoma City, OK, for Petitioner.

M. Daniel Weitman, Oklahoma City, OK, for Respondent.

JOE C. TAYLOR, Judge.

¶ 1 Employer, Deaconess Hospital, seeks review of an order of the three-judge panel of the workers' compensation court affirming the trial court's order finding Claimant, Deborah A. Ledbetter, sustained an accidental personal injury arising out of and in the course of her employment. The issues on appeal are (1) whether the workers' compensation court correctly determined that the statute of limitations had not run on Claimant's claim, and (2) whether there is competent evidence to support a causal connection between Claimant's hepatitis C and her work for Employer. Having reviewed the record, the parties' briefs, and the applicable law, we answer both questions in the affirmative, and sustain the panel's order.

¶ 2 At trial, the parties stipulated that Claimant worked for Deaconess Hospital from August 1994 until December 30, 1998, and that, due to a purchase, Claimant began working for Oklahoma Surgery and Urology on January 1, 1999. While working for both Deaconess and Oklahoma Surgery, Claimant was a lithotripsy technician. Her job duties required her to hold patients, who were anesthetized and catheterized, upright in a tub of water while sound waves were used to crush kidney stones. Although the tub was disinfected at the end of each day, Claimant testified it was not wiped down or disinfected

after each patient. This testimony was not refuted.

¶ 3 In order to hold and move patients in the water, Claimant would have to put her hands and often her arms into the water. Often the patient would bleed, urinate, and defecate in the water. According to Claimant, blood and urine were in the water 90 to 95% of the time. Although Claimant wore gloves that covered her hands to her wrists, the gloves did not protect her arms, and, if she had to put her arms in the water, the water would get inside the gloves. Sometimes she would have breaks in her skin when she had her hands in the water. Also, Claimant was sometimes splashed with body fluids while performing her job.

¶ 4 On March 24, 1999, Claimant was splashed with a considerable amount of body fluids. Because of this incident, she was tested, and the results were positive for hepatitis C. Although the parties now agree that the March 24, 1999, incident is not the incident in which Claimant contracted hepatitis C, it is the date that she was first diagnosed with the illness and became aware that she had it.

¶ 5 Claimant filed her Form 3 against Oklahoma Surgery and Urology Clinic on June 25, 1999, asserting that she contracted hepatitis C while handling blood and other body fluids as a lithotripsy technician. Deaconess subsequently was added as a respondent. Oklahoma Surgery and Deaconess both defended the claim by arguing the statute of limitations had run and/or that Claimant contracted hepatitis from another source (particularly from a tattoo needle or from a sexual partner).

¶ 6 The workers' compensation trial court found that on "March 24, 1999 (date of diagnosis) claimant sustained an accidental personal injury in the nature of Hepatitis C arising out of and in the course of [her] employment." (Emphasis omitted.) The court rejected the statute of limitations defense, finding that "[a]ccidental injury from an infectious disease such as Hepatitis C

does not occur until the condition becomes manifest" and "claimant's injury became manifest upon diagnosis: March 24, 1999." After "weighing all the evidence," the court also denied the defense of pre-existing injury, holding that, although "claimant had other potential exposures to Hepatitis C in her lifetime ... mere potential exposure without more is certainly no proof of a pre-existing infectious disease."

¶ 7 Due to symptoms that Claimant suffered in 1998 that have now been attributed to the hepatitis C and a report that hepatitis C has a minimum incubation period of three to six months in order to produce a positive test, the trial court assessed liability against only Deaconess Hospital, with whom Claimant was employed from August 30, 1994, through December 31, 1998. Thus, the trial court dismissed Oklahoma Surgery and Urology Clinic. Deaconess appealed to the three-judge panel, which affirmed the trial court's order.

## THE CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

¶ 8 Deaconess argues that the workers' compensation court erred in determining that the statute of limitations began to run from March 24, 1999, the date that Claimant was diagnosed with hepatitis C.[1] We disagree.

¶ 9 The statute of limitations for single-event injuries is two years from "the date of accidental injury or death." 85 O.S. Supp. 2000 § 43 (A). For cumulative trauma injuries, the limitations period is two years from "the date of last trauma or hazardous exposure." Id. And, for injuries arising from the occupational diseases of asbestosis, silicosis, or exposure to nuclear radiation, the limitations period is two years from "the date of last hazardous exposure or ... from the date said condition first becomes manifest by a symptom or condition from which one learned in medicine could, with reasonable accuracy, diagnose such specific condition,

1. We note, as did Deaconess, that the trial court also referred to September 14, 1998, as a possible injury date. This is the date on which a chiropractor, who was treating Claimant for an unrelated back injury, noted symptoms that were *later* attributed to hepatitis C. Because we find the trial court correctly determined that the date of injury was March 24, 1999, i.e., the date of diagnosis of hepatitis C, it is unnecessary for us to determine whether September 14, 1998, could be used as the date of injury.

whichever last occurs." Id. Hepatitis C, an infectious disease, is neither a cumulative trauma injury nor an occupational disease defined by § 43(A). Rather, it is a single-event injury that "is contracted from an **unexpected, but specific, exposure at a definite time** to the disease, where the exposure is by chance, or unintentional." *Wheaton v. City of Tulsa Fire Dep't,* 1998 OK CIV APP 155, ¶ 5, 970 P.2d 194, 195. Thus, we must determine whether Claimant filed her claim within two years of the date of her accidental injury. 85 O.S. Supp.2000 § 43 (A).

¶ 10 "Mere exposure to an infectious disease, no matter how threatening, is not enough to constitute a compensable event—it is not 'accidental injury.'" *Dyke v. Saint Francis Hosp., Inc.,* 1993 OK 114, ¶ 18, 861 P.2d 295, 301 (emphasis omitted). Rather, "[a]n on-the-job exposure must pass through the incubation period and develop into an infectious disease *before* it may be viewed as an accidental injury compensable by the employer." *Id.* An employee's or an employer's apprehension of exposure to a disease "cannot be translated into compensation liability for an 'accidental personal injury.'" *See id.,* 861 P.2d at 301–02.

¶ 11 We agree with the trial court that, based on the principles of *Dyke,* accidental injury from an infectious disease such as hepatitis C does not occur "until the condition becomes manifest." In the instant case, we find that Claimant's hepatitis C manifested itself when Claimant tested positive for the disease on March 24, 1999. Thus, Claimant's Form 3, which was filed on June 25, 1999, was timely, and the trial court correctly rejected Deaconess' statute of limitations defense.

## THE ORDER FINDING A COMPENSABLE INJURY IS SUPPORTED BY COMPETENT EVIDENCE

¶ 12 Deaconess next argues that Claimant did not meet her burden of proving that she contracted hepatitis C while working at Deaconess.[2] We use the any-competent-evidence standard to review the issue of whether Claimant's injury arose out of and in

the course of her employment with Deaconess. *See City of Edmond v. Monday,* 1995 OK 132, 910 P.2d 980. Under this standard we do not weigh the evidence; we simply canvass the facts to determine whether the workers' compensation court's decision is supported by competent evidence. *Leforce v. Legion Enter., Inc.,* 2001 OK CIV APP 35, 20 P.3d 177. In applying this standard, we must consider all the admissible evidence presented at trial, both lay and medical. *See Collins v. Halliburton Serv.,* 1990 OK 118, 804 P.2d 440.

¶ 13 In seeking workers' compensation, Claimant was required to prove (1) by lay testimony, the nature of the work performed at the time of the injury, and (2) by expert testimony, a nexus between that activity and the disability for which compensation is sought. *See Hughes v. Cole Grain Co.,* 1998 OK 76, ¶ 7, 964 P.2d 206, 208. Claimant carried her burden.

¶ 14 First, Claimant presented her own testimony describing in detail the type of work that she performed as a lithotripsy technician for Deaconess. She testified that her job required her to put her hands (which sometimes had cracks and breaks in the skin), and often her arms, in water that more often than not had blood and urine in it. She further testified that the gloves which she wore were mostly ineffective because the water would get inside them, especially when she had her arms in the water. Also, Claimant was splashed on occasion with body fluids. Finally, Claimant testified as to the method of cleaning the tub of water, which included disinfecting it only at the end of the day.

¶ 15 Claimant presented expert testimony from John W. Ellis, M.D., showing a nexus between her work activity and the hepatitis C. Dr. Ellis recited Claimant's history regarding her work for Deaconess as a lithotripsy technician. He also recited her history regarding other possible exposures to hepatitis C, such as a tattoo, sexual partners and relationships in the past few years, and the absence of any use of "IV or oral non-

**2.** This argument is tantamount to arguing that the panel's order is not supported by competent evidence.

prescribed drug." He specifically noted that Claimant had frequent exposure to body fluids from 1994 to 1999 while working as a lithotripsy technician, and that the gloves she wore did not protect her from exposure. He concluded that, due to multiple exposures to body fluids in the course of her job, Claimant had contracted acute hepatitis C infection that was causally connected to her employment. He opined as follows:

> It is medically more probable that her exposures to blood at the Oklahoma Surgery & Urology Center is the cause of her hepatitis C. Her risk of hepatitis C from the tattoo and sexual partners would be very low in comparison to her risk at the Oklahoma Surgery & Urology Center. The greatest risks are being an IV drug user or health care worker. It is my assumption that she is not an IV drug user.

Thus, there is competent lay and medical evidence to support a finding that Claimant's hepatitis C arose out of and in the course of her employment as a lithotripsy technician.

¶ 16 Deaconess criticizes Claimant's proof for several reasons. First, Deaconess argues that Claimant cannot rely on proof of contracting hepatitis C from the lithotripsy tub without proof that the blood was infected with hepatitis C. We reject this argument. In *Wheaton v. City of Tulsa Fire Dep't*, 1998 OK CIV APP 155, 970 P.2d 194, a claimant sought workers' compensation benefits for hepatitis C that he claimed he had contracted while working as a firefighter. Although he identified one specific instance where he was moving an injured individual who had hepatitis C, he also testified to several incidents during which he *may* have contracted the virus. Nevertheless, he was unable to pinpoint exactly which of the specific incidents caused him to contract the disease. The employer argued that the claimant's inability to identify the specific incident prevented him from recovering compensation benefits. The Oklahoma Court of Civil Appeals rejected this argument, holding, "Proof of several exposures, and that one of them caused the injury, is sufficient." *Id.* at ¶ 7, 970 P.2d at 196. The court recognized the possibility that "with repeated exposure in a job similar to Claimant's, . . . one would not know which of several exposures resulted in

his contracting the disease." *Id.* at ¶ 8, 970 P.2d at 196. *See also Wilson Foods Corp. v. Porter*, 1980 OK 77, 612 P.2d 261, 266 (although the claimant could not specifically identify employment incident which exposed him to brucellosis, he presented evidence of frequent contaminating incidents, that occurred within "the rather indeterminate incubation period for this disease").

¶ 17 In the instant case, we find it was sufficient for Claimant to show she had frequent exposure to blood and body fluids, either by placing her hands and arms in the tank of water or by being splashed. Claimant's inability to pinpoint exactly which exposure caused her to contract hepatitis C does not prevent her from recovering.

¶ 18 The South Carolina Court of Appeals reached the same result in *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583 (1999). The claimant in *Muir* examined failed foley catheters to determine the cause of the failure. Approximately 25% of the catheters had blood and urine on them. Although the claimant wore gloves when examining the catheters, water would sometimes migrate inside the gloves. Also, the claimant frequently stuck himself with scissors or needles during the process and sometimes the catheter balloon would explode and splash the contents onto the claimant. The claimant tested positive for hepatitis C and sought workers' compensation benefits.

¶ 19 The South Carolina Court of Appeals affirmed a grant of benefits to the claimant, rejecting the employer's argument that the claimant had failed to prove the hepatitis C arose out of his employment. The court relied on the claimant's medical evidence that the "most probable" or "most likely" origin of his hepatitis C was contamination from body fluids while working with the catheters. *Id.* at 594. Although the claimant could not point to a specific catheter, patient, or incident, the court relied on expert testimony showing that " '[t]he risk of contracting infectious diseases, including Hepatitis C, is well documented and recognized in persons exposed to medical devices contaminated with bodily fluids.' " *Id.* at 595. The court rejected the employer's expert evidence that transmission of hepatitis C through the catheters

was "unlikely because of the small amount or the absence of virus in urine, the rapid inactivation of virus outside of the body or a carefully controlled environment, and the lack of transmission [of hepatitis C] by skin contact alone." *Id. See also Flor v. Holguin,* 94 Hawai'i 70, 9 P.3d 382 (2000) (dental hygienist who contracted hepatitis C was entitled to compensation although she could not present direct or conclusive evidence that she had been exposed to or infected by hepatitis C during her employment); *Price v. City of New Orleans,* 672 So.2d 1045 (La.App.1996) (firefighter entitled to compensation for hepatitis C, although he was unable to point to particular contaminating incident); *Sirkin & Levine v. Timmons,* 652 A.2d 1079 (Del.Super.1994) (employer responsible for dental hygienist's hepatitis C, even though hygienist could not point to one of employer's patients who had the disease; court accepted hygienist's statement regarding her knowledge of a dental hygienist's substantial risk of contracting hepatitis C).

¶ 20 Deaconess also argues that the workers' compensation court's order is not supported by competent evidence because Deaconess proved that Claimant had potential exposure outside of employment, such as multiple sex partners and a tattoo. Deaconess' expert attributes Claimant's hepatitis C to these outside exposures. The trial court specifically addressed these exposures and Claimant's explanation of them.[3] First, the court noted that "mere potential exposure without more is certainly no proof of a pre-existing infectious disease." After weighing the evidence, the court rejected Deaconess' defense of pre-existing injury. Moreover, the court found Claimant to be a credible witness. Finally, the court accepted as true Claimant's unrefuted testimony regarding her job duties, her exposure to body fluids, and the procedure for cleaning the tank. The determination of the credibility of a witness and the weight to be given a witness's testimony is for the trial court. *See Bittman v. Boardman Co.,* 1977 OK 32, 560 P.2d 967.

---

**3.** Claimant testified that she has had only one sex partner in the last ten years and that she and the individual had a monogamous relationship.

## CONCLUSION

¶ 21 Because Claimant filed her claim within two years of the manifestation of the hepatitis C (within two years of its diagnosis), her claim is not barred by the statute of limitations. The trial court's order finding that hepatitis C arose out of and in the course of Claimant's employment, and the panel's affirmance of that order, are supported by competent evidence. Therefore, we sustain the panel's decision.

¶ 22 SUSTAINED.

¶ 23 STUBBLEFIELD, P.J., and RAPP, J., concur.

---

Moreover, Claimant testified that, when she got her tattoo, she observed the sterilization procedures used and knew they were safe.