2006 OK CIV APP 57

**CITY OF TULSA FIRE DEPARTMENT, Own Risk, Petitioner,**

v.

**Keith A. MILLER and The Workers' Compensation Court, Respondents.**

No. 102,009.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 14, 2006.

Alan L. Jackere, Acting City Attorney, David A. Shapiro, Assistant City Attorney, Cornelius R. Johnson, Assistant City Attorney, City of Tulsa, a municipal corporation, Tulsa, OK, for Petitioner.

J.L. Franks, Tomy W. McDonald, Frasier, Frasier & Hickman, Tulsa, OK, for Respondent Keith A. Miller.

Opinion by KENNETH L. BUETTNER, Chief Judge:

¶1 Keith A. Miller was a twelve-year member of the Tulsa Fire Department where he worked as a first responder. Sometime during his employment, he contracted hepatitis C. The Workers' Compensation Court found that, as is often the case in these types of claims, the claimant could not testify as to which, of several exposures, was the source of the disease. It then found the claim compensable. A three-judge panel unanimously affirmed. We sustain the order.

¶2 Miller filed his Form 3 June 4, 2003, seeking medical treatment from May 10, 2003 and continuing. The City of Tulsa (Tulsa) denied that the injury was related to work.

¶3 For documentary evidence, Miller submitted a report from Dr. Hallford, dated May 29, 2003. The doctor took a history from Miller, including that one candidate for transmission of the virus had tested negative, but she was the only one tested. The doctor made a general statement: "Health care and public safety workers are certainly known to be at higher risk of catching such blood-borne infections and he has no other history of exposure." The doctor further stated that

hepatitis C can progress slowly and cause liver damage, but that Miller was currently asymptomatic. This doctor formed the opinion with a reasonable degree of medical certainty that Miller's HCV infection was work-related and that he should see a gastroenterologist or hepatologist to see if he was a candidate for Interferon therapy and/or antiviral medication. Finally, the doctor found that Miller was working and could continue working, with standard blood precautions.

¶ 4 Miller also submitted treatment notes from 2000 showing abnormal liver function tests and his denial of high risk activities. He admitted moderate alcohol intake. The hepatitis C diagnosis was made after previous work-ups of abnormal liver function tests. There are also hand-written treatment notes dating from 1991.

¶ 5 Tulsa submitted a report from Dr. Mitchell, dated August 18, 2003. Dr. Mitchell stated that Miller claimed that there was only one possible exposure to hepatitis C, but this exposure subsequently tested negative and Miller was unable to recall any other exposures to blood or blood products during his employment. Dr. Mitchell related the clinical chronology of Miller's condition. He noted that Miller admitted having had unprotected sex with two different women after his divorce and that he was not aware of their hepatitis status. The doctor performed a physical examination and reviewed medical records. He formed the opinion that Miller did not contract the hepatitis C virus as a result of work activities with the Tulsa Fire Department. He founded this opinion on the fact that the source tested negative and Miller could recall no other incidences where he was exposed to blood or blood products. He further based his opinion on information from the Center for Disease Control which apparently states that Miller is at intermediate risk for contracting the disease because of his undiagnosed liver problems, noting that Miller had elevated liver function tests since 1996. He stated that other sources of the infection include his episodes of unprotected sex with partners of unknown hepatitis C status. Tulsa also introduced Miller's treatment records for historical purposes.

¶ 6 Finally, Miller testified. He stated that his job as a first responder firefighter required him to be exposed to blood and blood-borne pathogens sometimes several times a day, sometimes several times a week. They respond to such things as car accidents. He was first diagnosed with hepatitis C in 2000, but his liver function tests had been elevated for several years. He testified that firefighters get regular physicals from the City physician once a year and his liver enzymes had been high for several years, but the City doctor said it was nothing serious, that many things could cause that. However, his treating physician wanted to follow up and in 2000, he tested positive for hepatitis C. He testified that he could point to no specific incident of exposure to the virus, and outside his employment with Tulsa, he did not work in any healthcare areas. For the first eight years of his employment with Tulsa, he worked with Engine 27, which was usually the first, sometimes the second, busiest engine company. He stated that he was not an intravenous drug user, did not engage in homosexual activity; had not had sexual contact with women that he knew had hepatitis C; and that he had not been exposed to hepatitis C outside of his employment, so far as he knew. He testified that Dr. Mitchell's statement that he could not recall any other instance in which he was exposed to blood borne products except the one incident where the person tested negative, was untrue. He stated that he had been exposed to blood several times. Currently, he was not experiencing any problems due to his hepatitis C status, except some fatigue and occasionally flu-like symptoms. He stated that so far as he knew, he was not diagnosed with hepatitis C before he began employment with Tulsa.

¶ 7 On cross-examination, Miller stated that the one incident in 1996 where the person was tested, he was aware that her hepatitis test came back negative. He agreed that he could not relate his contracting hepatitis C to any specific incident while on duty. Prior to 1996, Tulsa did not have a policy about reporting contacts with body fluids, just blood-to-blood contact, which is why the 1996 contact was reported. He stated that he had had unprotected sex with three wom-

en since 1990 and none, to his knowledge, have been tested for hepatitis C.

¶ 8 On re-direct examination, Miller testified that hepatitis C can be transmitted blood-to-blood, or through eyes, nose, mouth, ears or even nail beds and that he had been exposed numerous times to blood in those ways.

¶ 9 Title 11 O.S.2001 § 49–110(A) provides: No firefighter shall be retired, as provided in Section 49–109 of this title, or receive any pension from the System [municipal retirement system], unless there shall be filed with the State Board certificates of the firefighter's disability. Any member of the fire department of any municipality who is disabled as a result of heart disease, injury to the respiratory system, infectious disease, or cancer was not revealed by the physical examination passed by the member upon entry into the department, shall be **presumed** to have incurred the heart disease, injury to the respiratory system, infectious disease, or cancer while performing the firefighter's duties as a member of such department unless the contrary is shown by competent evidence. As used in this section, "infectious disease" means hepatitis, human immunodeficiency virus, meningitis and tuberculosis. (Emphasis added).[1]

¶ 10 In *Johnson v. City Woodward,* 2001 OK 85, 38 P.3d 218, the Oklahoma Supreme Court applied the § 49–110 presumption to a firefighter's heart disease claim. It held that the Workers' Compensation Court was the court to determine whether the carrier had "rebutted the presumption of subsection (A) by competent evidence and whether the illness is job-related." *Id.* at ¶ 17, p. 225. The *Johnson* court further noted that although § 49–110(A) may be inartfully drafted, the legislature nonetheless intended that the presumption that the disease was incurred during service unless the contrary is shown, was meant to be woven into the workers' compensation system.

Consequently, because the facts at hand were that Miller did not have hepatitis when he began his firefighter career, there is a legal presumption that he contracted this disease during his service as a firefighter. The burden then shifted to Tulsa to produce competent evidence to the contrary.

¶ 11 On appeal, Tulsa argues that Miller presented no evidence that related his hepatitis C to any incident at work.[2] As we have explained, the presumption is that Miller did contract the virus at work, once he showed he was free from it when he began his tenure with the fire department. It then became Tulsa's burden to present competent evidence to rebut that presumption.

¶ 12 Tulsa relies on *Deaconess Hospital v. Ledbetter,* 2002 OK CIV APP 29, 41 P.3d 1050, in which a lithotripsy technician contracted hepatitis. It was unrefuted that the water tub in which she placed her hands contained human blood, urine and some fecal matter and was not cleaned between patients. Although she wore gloves, water often came over the tops of the gloves. There was no particular time she could recount when she would have contracted the virus. The hospital put forth evidence that the worker had tattoos and multiple sexual partners. The appellate court found that the claimant's evidence prevailed and awarded her benefits. It cited the *Wheaton v. City of Tulsa Fire Department,* 1998 OK CIV APP 155, 970 P.2d 194, ¶ 7, p. 196, for the principle that ". . . the fact Claimant cannot specify which of several specific incidents [exposures] caused him to contract the virus, does not bar him from recovery under this theory. Proof of several exposures, and that one of them caused the injury, is sufficient."

¶ 13 Neither *Wheaton* nor *Deaconess Hospital* mentions the § 49–110(A) presumption. This is because "infectious disease" was added to § 49–110(A) by Laws 2001, c. 359, effective July 1, 2001. *Wheaton* was decided in 1998, and *Deaconess Hospital* involved an employee that had contracted hepatitis C

---

1. Effective July 1, 2002, section A was amended by the addition to the end of the paragraph of this sentence: "Effective November 10, 1999, the provisions of this subsection relating to infectious disease shall apply."

2. On appeal to the three-judge panel, Tulsa alleged that Miller was unable to state or pinpoint any specific exposure.

before March 24, 1999. Then, in 2002, the Legislature made the provision of § 49–110(A) relating to infectious diseases retroactive to November 10, 1999. As a result, neither *Wheaton* nor *Deaconess Hospital* provide guidance when the § 49–110(A) presumption applies.

¶ 14 The presumption is that Miller, who was hepatitis-free when he began his employment as a firefighter, contracted the virus as a result of his employment. The City of Tulsa did not produce sufficient evidence to convince the trial court to the contrary.

¶ 15 The decision of the trial court, as unanimously affirmed by the three-judge panel, is SUSTAINED.

MITCHELL, P.J., and ADAMS, J., concur.