2009 OK CIV APP 87

**Jeffrey TAYLOR, Petitioner/Appellant,**

v.

**STATE of Oklahoma ex rel. The Oklahoma POLICE PENSION AND RETIREMENT BOARD, Respondent/Appellee.**

**No. 106,349.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 18, 2009.

James R. Moore, Sue Wycoff, Moore & Vernier, P.C., Oklahoma City, OK, for Petitioner/Appellant.

Steven K. Snyder, Executive Director, Oklahoma Police Pension and Retirement Board, Oklahoma City, OK, Victoria V. Johnson, Davis Graham & Stubbs LLP, Denver, CO, for Respondent/Appellee.

DOUG GABBARD, II, Presiding Judge.

¶ 1 Petitioner/Appellant Jeffrey Taylor appeals the trial court's order affirming the Oklahoma Police Pension and Retirement Board's denial of his application for a disability benefit. The Board found competent evidence to rebut a statutory presumption that Taylor's disability was incurred while performing his job. After reviewing the facts and the law, we reverse and remand with instructions.[1]

## FACTS

¶ 2 In 2004, Taylor was hired as a police officer for the City of Glenpool. About a year later, he began experiencing tremors in his right arm and hand, and was diagnosed as suffering from Parkinson's syndrome. Doctors implanted an electrode in his brain and a battery in his chest wall to help control the tremor. The City determined he was disabled and terminated him from his job on the force.

¶ 3 Taylor applied for disability benefits from the State Police Pension and Retirement Board.[2] He asserted that his job had required that he use road flares and handle methamphetamine taken from arrestees. Both the flares and the drug contain red phosphorous which, according to studies noted by his treating physician, can trigger the development of Parkinson's symptoms.

¶ 4 The evidence at the Pension Board hearing was disputed. Several officers supported his claim that he had handled, tested, and inventoried methamphetamine, and handled and been in close proximity to road flares. On the other hand, the Glenpool police chief stated that Taylor had only participated as a back-up officer in one incident involving methamphetamine; had never been involved in a meth lab arrest; and had never notified the Department about exposure to any dangerous substance.

¶ 5 The medical evidence was also disputed. Taylor's doctors noted that traditional medical treatment for Parkinson's disease had not helped him, leading them to conclude that he suffered from Parkinsonism syndrome, which has similar symptoms to Parkinson's disease. According to his treating physician, Dr. Kevin J. Klos:

> In our experience, toxin induced parkinsonism does not respond to traditional medication therapy as does Parkinson's disease. I believe to a reasonable degree of medical certainty that his exposure to this environmental toxin may have influenced the developments of his parkinsonism.

1. On the ground that Taylor's appellate reply brief alleges that the Board "seriously misrepresents the evidence that was before the Board at the hearing," the Board has filed a Motion for Oral Argument to primarily discuss the "[a]ccuracy of the parties' statements concerning key aspects of the record." We have thoroughly reviewed the record submitted and find oral argument for that purpose unnecessary. The Board's motion for oral argument is denied.

2. Taylor also filed workers' compensation benefits. The parties have not provided any information concerning whether benefits were awarded.

Dr. Paul Francel, the doctor who performed the implant, agreed that Taylor's condition was "toxin-induced." Dr. Kenneth R. Trinidad, his workers' compensation doctor, noted that it was common for a person to suffer from a parkinsonian-like syndrome, and not from true Parkinson's disease, when exposed to chemical toxins. Dr. Trinidad opined that Taylor's injuries were due to work-related trauma through exposure to red phosphorous.

¶ 6 However, other evidence showed Taylor had a family history of tremors, and several doctors disputed the reports mentioned above. Dr. John A. Munneke was retained by the Board. He examined Taylor and reviewed the records, noting that Dr. Klos' records indicated that Taylor had given a history of having a right-sided resting tremor for several years prior to August 9, 2006. Dr. Munneke stated:

[I]t is my opinion the patient does have a tremor in his right upper extremity. However, it is my opinion that his tremor and possibly his Parkinson's disease is unrelated to his alleged exposure to toxin while working for the Glenpool Police Department.

While the treating physicians' opinions are correct, with regard to the possibility that his Parkinsonism is toxin induced, they are operating on erroneous information and it is my opinion that his Parkinsonism is not toxin induced and is unrelated to his work as a police officer.

The patient will need further medical care with regard to his current problem. However, his current problem is not the result of his employment as a police officer for the Glenpool Police Department.

¶ 7 Three months after writing his report, Dr. Munneke issued a further report, stating that after reviewing additional medical reports, including Dr. Trinidad's, his opinion

was unchanged. Additionally, a doctor retained by the City of Glenpool, Dr. J. Mike Banowetz, opined that the disease was degenerative and idiopathic, not relating to Taylor's exposure to chemicals.[3]

¶ 8 In a 12-page decision, the Pension Board extensively reviewed the evidence, concluded that Taylor had been exposed to hazardous substances in the line of duty, and applied the presumption found in 11 O.S. Supp.2008 § 50–115(I) that Taylor "incurred such disability while performing the officer's duties." However, the Board also found that the presumption was overcome by competent "contrary" evidence, concluded that Taylor was not disabled from a condition that was the result of exposure to hazardous substances, and denied his request for benefits.

¶ 9 Taylor filed a petition for judicial review. The trial court affirmed the Board's decision. Taylor now appeals.

## STANDARD OF REVIEW

¶ 10 Generally, in reviewing a state agency's order, we will affirm unless we determine that the agency's decision is clearly erroneous in view of the reliable, material, probative, and substantial competent evidence. 75 O.S.2001 § 322(1)(e); *see also Seely v. Okla. Horse Racing Comm'n,* 1987 OK CIV APP 61, ¶ 7, 743 P.2d 685, 688–89. We apply this competent evidence test to the agency's decision, not the district court's. *State ex rel. Bd. of Trustees of Teachers' Retirement Sys. v. Garrett,* 1993 OK CIV APP 29, n. 8, 848 P.2d 1182, 1183–84. However, 11 O.S. Supp.2008 § 50–115(I) states the presumption applies "unless the contrary is shown by competent evidence." Therefore, we must determine whether the Pension Board's decision that the statutory presumption was overcome is supported by competent evidence.[4]

---

**3.** "Idiopathic" has been defined as arising spontaneously or from an obscure or unknown cause. *Webster's Third New International Dictionary* 1123 (1986)

**4.** In *City of Edmond v. Vernon,* 2009 OK CIV APP 36, 210 P.3d 860, we recently upheld the constitutionality of 11 O.S. Supp.2008 § 49–110, which created a presumption that municipal firefighters who are disabled by certain diseases (there, can-

cer) incurred such diseases while performing job-related duties "unless the contrary is shown by competent evidence." Relying on *Scheets v. Ada Fire Department,* 2004 OK CIV APP 8, 83 P.3d 905, and *City of Tulsa Fire Department v. Miller,* 2006 OK CIV APP 57, 135 P.3d 850, we stated:

Here, as in *Miller,* the workers' compensation court received conflicting medical evi-

## ANALYSIS

¶ 11 Although Taylor asserts several propositions of error, one is dispositive: Taylor asserts that the Board improperly applied the statutory presumption and reached an inconsistent decision with conflicting findings.[5] We agree.

■ ¶ 12 Title 11 O.S. Supp.2008 § 50–115(I) provides:

> Any member of a police department of any municipality *who, in the line of duty, has been exposed to hazardous substances,* including but not limited to chemicals used in the manufacture of a controlled dangerous substance or chemicals resulting from the manufacture of a controlled dangerous substance, or to blood-borne pathogens *and who is later disabled from a condition that was the result of such exposure* and that was not revealed by the physical examination passed by the member upon entry into the System *shall be presumed to have incurred such disability while performing the officer's duties* unless the contrary is shown by competent evidence. (Emphasis added.)

■ ¶ 13 Before applying the § 50–115(I) presumption, the Board must answer these preliminary questions: *first,* is the applicant a member of a municipal police department; *second,* was the applicant "exposed to hazardous substances" in the line of duty; *third,* was the applicant "later disabled from a condition that was the result of such exposure," that is, was his condition caused by some exposure to the hazardous substance in question, although not necessarily the specific line-of-duty exposure; and *fourth,* was the condition one which was not pre-existing at the time the applicant passed the physical examination to enter the retirement system. If the answer to any question is negative, the statutory presumption does not apply. If the answer to each question is affirmative, the Board must apply the presumption and presume that the applicant's disability resulted from the line-of-duty exposure, as opposed to some other exposure to the same hazardous substance. Furthermore, the presumption continues unless there is competent evidence "contrary" thereto. The "contrary" evidence necessary to rebut the presumption must not bear upon whether the applicant was disabled as a result of *some exposure* to the hazardous substance in question, a fact which the Board has already determined, but must demonstrate that the applicant's disability has not resulted from the *specific line-of-duty exposure claimed by the applicant, i.e.,* it must demonstrate that the applicant has not "incurred such disability while performing the officer's duties."

¶ 14 Indisputably, Taylor had been a member of the Glenpool Police Department. In addition, the Board found that Taylor had been exposed to the hazardous substance red phosphorous in the line of duty. It also found that he was entitled to the statutory presumption. By imposing the presumption, the Board implied that it had determined Taylor's disability "was the result of" some exposure to red phosphorous, and that his

---

dence and concluded that City had not overcome the statutory presumption. Generally, the workers' compensation court's determination of a factual question is final. *See* 85 O.S. Supp.2008 § 26(B). Because there is competent evidence to support the trial court's determination, its decision is sustained. *Id.* at ¶¶ 24–26.

*Vernon* at ¶ 26, 210 P.3d at 866. Though *Vernon* was a workers' compensation case, where separate standards apply, both it and the present case involve statutes in which a presumption applies unless rebutted by *competent evidence.* Under the rule that a specific statute controls a general statute, *Aetna Cas. and Sur. Co. v. State Bd. for Prop. and Cas. Rates,* 1981 OK 153, ¶ 24, 637 P.2d 1251, 1257, we find that 11 O.S. Supp. 2008 § 50–115(I) controls over the general "substantial evidence" rule provided in 75 O.S.2001 § 322(1). Therefore, we must review the

Board's decision that the presumption was overcome to determine whether it is supported by competent evidence.

5. Taylor asserted the Board's decision was clearly erroneous and arbitrary because his evidence establishing causation was "overwhelming." He also asserted the Board's order was not supported by the evidence. Finally, he asserted the Board committed three errors of law justifying reversal: a) the Board improperly applied the statute; b) the Board attributed his condition to his own negligence, improperly substituting its own judgment for that of experts; and c) the Board based its decision on "unknown reasoning" by failing to determine what caused his disability, if not his on-the-job exposure to hazardous chemicals.

disability was not pre-existing when he entered the retirement system. After imposing the presumption, the Board was required to presume that the exposure to red phosphorous which resulted in his Parkinson's syndrome occurred *in the line of duty.* At that point, the only "contrary" evidence which could be shown was evidence that Taylor's Parkinson's syndrome did not result from a line of duty exposure to red phosphorous, but from some other exposure or exposures to red phosphorous. Such rebuttal evidence was never presented.

¶ 15 Nevertheless, the Board ultimately denied benefits on the grounds that Taylor "was not disabled from a condition that was the result of exposure to hazardous substances." In other words, the Board found that Taylor's disability was not caused by any exposure to red phosphorous, a finding contrary to, and inconsistent with, findings implied in its application of the statutory presumption. The courts of this state have long held that a judgment containing material findings which are inconsistent with each other will be set aside. *Dickerson v. Waldo,* 1903 OK 69, ¶ 0, 13 Okla. 189, 74 P. 505 (syllabus of the court # 1); *Magnolia Petroleum Co. v. Phillips,* 1933 OK 146, ¶ 0, 162 Okla. 149, 19 P.2d 576 (syllabus of the court # 1).

¶ 16 Because the Board's order denying benefits contains inconsistent factual findings, we must reverse.

## CONCLUSION

¶ 17 Accordingly, the Board's order denying benefits is hereby reversed and remanded with instructions that a new hearing be conducted and, at the conclusion thereof, the Board enter findings of fact, apply the law to the facts in a manner consistent with this opinion, and reach its decision.

¶ 18 REVERSED AND REMANDED WITH INSTRUCTIONS.

RAPP, J., and FISCHER, J., concur.